# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re: JEFFREY G. NOVAK
SAMARA L. NOVAK,   No. 13-16-11408 JA
Debtors.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Joint Stipulation of Facts and Request for Ruling Without Holding a Final Evidentiary Hearing (Docket No. 57) (the "Joint Request") filed by Debtors and approved by the Chapter 13 trustee and the New Mexico Department of Workforce Solutions ("NMDWS"). In the Joint Stipulation, the parties request that the Court determine whether Samara L. Novak's unemployment compensation benefits must be included in the calculation of current monthly income and disposable income for the purpose of Debtors' Chapter 13 plan based on the stipulated facts and without a hearing.[1]

## STIPULATED FACTS

The parties stipulate to the following facts:

1.  Debtors filed their chapter 13 petition on June 7, 2016.

2.  Debtor Samara Novak lost her position at Sysco New Mexico on June 16, 2016. She has been unemployed since that time.

3.  Samara Novak's unemployment insurance claim was filed with NMDWS on August 7, 2016. She began receiving benefit payments from NMDWS on August 28, 2016.

4.  Benefits for Ms. Novak are paid weekly in the amount of $428. Twenty-five dollars of each weekly payment of $428 constitutes a "dependency allowance," which is $25 per child for one child. Without the dependency allowance, Ms. Novak's weekly benefit amount would be $403.

---

[1] The parties request that the Court decide the issue on stipulated facts is functionally equivalent to a joint motion for summary judgment under Fed. R. Civ. P. 56. The Court treats it as such.

1

5. Ms. Novak has received benefits to the present date. She is eligible to receive a maximum of 26 weekly payments, or until the week ending February 11, 2017.

6. Ms. Novak receives benefits pursuant to NMSA 1978, 51-1-1 *et. seq* the New Mexico "Unemployment Compensation Law." Her eligibility is determined under NMSA 1978, § 51-1-4, § 51-1-5 and 51-1-7, NMSA 1978. Benefits are paid from the Unemployment compensation fund described in NMSA 1978, § 51-1-19.

## DISCUSSION

To be confirmable, a Chapter 13 plan must provide either full payment of all allowed unsecured claims or that all of the debtor's projected "disposable income" during the plan period is applied to make payments to the debtor's unsecured creditors. 11 U.S.C. § 1325(b)(1). Disposable income is defined as "current monthly income" less certain enumerated expenses. 11 U.S.C. § 1325(b)(2). Section 101(10A) provides:

The term "current monthly income"--

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> > (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

2

The language at issue is Section 101(10A)(B)'s exclusion of "benefits received under the Social Security Act" from a debtor's current monthly income calculation (the "SSA Exclusion"). This language was added as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Debtors assert unemployment compensation benefits are "benefits received under the Social Security Act." The Chapter 13 trustee disagrees. Neither the Tenth Circuit nor the Tenth Circuit Bankruptcy Appellate Panel has addressed the issue.

Many courts have addressed whether the SSA Exclusion covers unemployment compensation benefits. The first two bankruptcy courts to address the issue held that unemployment benefits are "benefits received under the Social Security Act." *See In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007)*; In re Munger,* 370 B.R. 21 (Bankr. D. Mass. 2007). Nine other bankruptcy courts and one district court subsequently addressed this issue, all of which held that unemployment compensation must be included in the calculation of a debtor's current monthly income. *DeHart v. Baden* (*In re Baden*), 396 B.R. 617 (Bankr. M.D. Pa. 2008); *In re Kucharz*, 418 B.R. 635 (Bankr. C.D. Ill. 2009); *In re Washington*, 438 B.R. 348 (M.D. Ala. 2010); *In re Rose*, No. 09-70088, 2010 WL 2600591 (Bankr. N.D. Ga. May 12, 2010); *In re Nance*, No. 09-05604, 2010 WL 2079653 (Bankr. S.D. Ind. May 21, 2010); *In re Winkles*, No. 10-30137, 2010 WL 2680895 (Bankr. S.D. Ill. July 6, 2010); *In re Ormonde*, No. 10-10767-B-13, 2010 WL 9498235 (Bankr. E.D. Cal. Aug. 4, 2010); *In re Overby*, No. 10-20602, 2010 WL 3834647 (Bankr. W.D. Mo. Sept. 24, 2010); *In re Gentry*, 463 B.R. 526 (Bankr. D. Colo. 2011); and *In re Vandyne*, No. 09-65200, 2011 WL 3664551 (Bankr. N.D. Ohio Aug. 19, 2011). More recently, two courts seemed to reject the reasoning of the courts holding that unemployment compensation benefits were not excluded under the SSA Exclusion in holding that the SSA Exclusion applies to Medicaid

3

waiver and adoption assistance benefits. *In re Adinolfi*, 543 B.R. 612 (B.A.P. 9th Cir. 2016) and *In re Hite*, 557 B.R. 451 (Bankr. W.D. Va. 2016).

The SSA encourages, but does not require, that states create an unemployment compensation system. *Sorrell*, 359 B.R. at 181. Unemployment compensation is administered at the state level and in accordance with state law. *Washington*, 438 B.R. at 351. However, a state's unemployment compensation laws are subject to various requirements set forth in the SSA. *Sorrell*, 359 B.R. at 181 (citing 42 U.S.C. § 1321). For example, states must provide an "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." 42 U.S.C. § 503(a)(3). States must also include in their laws "[a] requirement that, as a condition of eligibility for regular compensation for any week, a claimant must be able to work, available to work, and actively seeking work." 42 U.S.C. § 503(a)(12).

The states' unemployment compensation laws are also subject to requirements set forth in other federal laws, including the Federal Unemployment Tax Act ("FUTA") (26 U.S.C. § 3301 *et. seq*). Pursuant to the FUTA and SSA, the Secretary of Labor must approve and certify a state's unemployment compensation laws before the state is eligible for federal funding. 42 U.S.C. § 503(a), 26 U.S.C. § 3304. Certification pursuant to the FUTA requires that a state's laws comply with nineteen different requirements set forth in 26 U.S.C. § 3304(a).[2] States may be enjoined

---

[2] A state's laws must comply with nineteen different requirements set forth in 26 U.S.C. § 3304(a) to obtain certification under the FUTA. These requirements include "(1) all compensation is to be paid through public employment offices or such other agencies as the Secretary of Labor may approve" and "(5) compensation shall not be denied in such State to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (A) if the position offered is vacant due directly to a strike, lockout, or other labor dispute; (B) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (C) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization," among others.

4

from enforcing their laws that do not comply with these requirements.[3]  *E.g., California Dep't of Human Res. Dev. v. Java*, 402 U.S. 121, 135, 91 S. Ct. 1347, 1356, 28 L. Ed. 2d 666 (1971) (enjoining state from enforcing a provision of its unemployment compensation law "because it is inconsistent with § 303(a)(1) of the Social Security Act.").

Pursuant to the SSA, the federal government provides substantial funding to assist the states with the cost of administering their unemployment compensation system.  *Gentry*, 463 B.R. at 529.  All unemployment compensation benefits are funded through a state levied tax, which the

---

[3] In *Jenkins v. Bowling*, 691 F.2d 1225, 1228 (7th Cir. 1982), the court provided the following discussion of this unintuitive rule:

> As an original matter one might wonder how a state statute could be challenged as inconsistent with section 303(a) of the Social Security Act, and hence as invalid under the supremacy clause, when section 303(a) does not purport to require anything of the states. A state can have any kind of unemployment compensation scheme it wants, at least so far as the Social Security Act is concerned, provided it does not insist on receiving federal money. Since the Act is addressed not to the state but to the Secretary of Labor, one might think the appropriate remedy for a violation was an order forbidding the Secretary to pay money to the noncomplying state for its unemployment-compensation program, which is not what the plaintiffs in this case have asked for; or, less obviously, an order forbidding the state to use federal money unless it conforms its unemployment insurance law to the requirements of the Social Security Act. Such a remedy was upheld in *Rosado v. Wyman*, 397 U.S. 397, 420–422, 90 S. Ct. 1207, 1221–1222, 25 L. Ed. 2d 442 (1970), but is not what the plaintiffs want either. They just want the held in abeyance proviso enjoined.
>
> Despite the lack of any obvious basis in the language of section 303(a) for such a remedy, the Supreme Court, though without discussion of the issue beyond an extremely cryptic dictum in *Rosado*, supra, 397 U.S. at 421, 90 S. Ct. at 1222, has consistently assumed that it is a proper remedy, *see California Dep't of Human Resources v. Java*, 402 U.S. 121, 91 S. Ct. 1347, 28 L. Ed. 2d 666 (1971); *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S. Ct. 1898, 52 L. Ed. 2d 513 (1977); *cf. King v. Smith*, 392 U.S. 309, 88 S. Ct. 2128, 20 L. Ed. 2d 1118 (1968), as have the lower federal courts, *see, e.g.*, *Wilkinson*, supra. We regard the point as too well settled to be questioned by us, especially since the defendants do not question it either. The result, at least given *Rosado*, makes a certain amount of practical sense in a case like this; it is unlikely that faced with a choice (as in *Rosado* ) between forgoing federal money and modifying or even abandoning section 602 B, a provision as we shall see of limited practical significance, Illinois would choose to forgo the money. Maybe that is why the defendants have not questioned the nature of the remedy that the plaintiffs are seeking.

5

states must remit to the Secretary of Treasury.[4] *Id*. The Secretary of Treasury then deposits those funds into a separate Unemployment Trust Fund for each state. *Id.* States then request payment from the trust fund to pay beneficiaries. *Id.*

New Mexico enacted its Unemployment Compensation Law (N.M. Stat. Ann. § 51-1-1 *et. seq*) the year following the enactment of the Social Security Act. The rate at which employers must contribute to the New Mexico Unemployment Compensation fund is based on numerous factors, including the type of industry and the employer's history. N.M. Stat. Ann. § 51-1-11. A claimant's eligibility for and amount of benefits are determined pursuant to New Mexico law. N.M. Stat. Ann. §§ 51-1-4 through 51-1-7, which is designed to be consistent with the requirements of the FUTA, 26 U.S.C. § 3304(a), and the SSA, 42 U.S.C. § 503(a)(12). Claimants submit their claims to the New Mexico Department of Workforce Solutions ("NMDWS") in accordance with the procedures established under New Mexico law.[5] N.M. Stat. Ann. § 51-1-8. Claimants may appeal the NMDWS claims examiner's decision on their claim first to an NMDWS hearing officer, then to the secretary of NMDWS, and finally to the New Mexico state court system. N.M. Stat. Ann. § 51-1-8(D), (H), (M), and (N). This procedure is designed to comply with the SSA, 42 U.S.C. § 503(a)(3).

Courts have reached different conclusions on how the mixture of federal and state law present in the unemployment compensation benefits systems informs the SSA Exclusion issue. The *Sorrell* court found that unemployment compensation is truly a creature of the SSA and, thus, held that the SSA Exclusion includes unemployment compensation benefits. *Sorrell*, 359 B.R. at

---

[4] The exceptions are that the federal government funds 50% of "extended" unemployment compensation benefits when congress authorizes payment of benefits beyond the customary 26-week period authorized by most states and states may obtain loans from the U.S. Treasury when they have a shortfall. *Gentry*, 463 B.R. at 529.
[5] Visit https://www.dws.state.nm.us/Unemployment-Insurance/UI-Tax-Claims-System/NM-Workforce-Connection-UI-System for an overview of the state administered claims processing system.

6

181-83. Other courts find that because unemployment compensation benefits are funded by a state levied tax and the system is largely administered by the states in accordance with state law, the benefits are not received under the SSA. *See e.g., Winkles*, 2010 WL 2680895, at *3.

Courts have also reached divergent holdings when attempting to interpret the SSA Exclusion in accordance with various principals of statutory interpretation. For example, BAPCPA contains references to both "social security benefits" and "unemployment compensation." Some courts infer from this that Congress intended "benefits received under the Social Security Act" to apply broadly and include both categories. *Sorrell*, 359 B.R. at 183; *Munger*, 370 B.R. at 25-26. Other courts draw a different inference and hold that "the distinction between unemployment compensation and social security benefits [is] a manifestation of Congress' intent that the Bankruptcy Code treat the current and temporary replacement of wages administered by the state differently than future benefits associated with old age, ordinarily administered by the federal government." *Baden*, 396 B.R. at 621; *Winkles*, 2010 WL 2680895, at *4 (citing *Baden*, 396 B.R. at 621); *Overby*, 2010 WL 3834647, at *3 ("Congress provides an exemption for both 'a social security benefit' and 'unemployment compensation,' suggesting the two are not one and the same."). Two courts conclude that there is no meaningful distinction between the language "benefits received under the Social Security Act" and "Social Security benefits" and hold that because the latter obviously did not include unemployment compensation benefits that the former does not either. *Washington*, 438 B.R. at 351-53; *Rose*, 2010 WL 2600591, at *1, n. 3.

Applying the plain meaning rule of statutory interpretation, several courts observe that the dictionary definition of "under" is "in accordance with" or "required by" and hold that the Social Security Act does not require that states pay unemployment compensation benefits, but merely

7

incentivizes states to do so. *See Kucharz*, 418 B.R. at 641(citing Webster's Third New International Dictionary of the English Language Unabridged (1976); *Winkles*, 2010 WL 2680895, at \*3 (citing *Kucharz*, 418 B.R. at 641); *Gentry*, 463 B.R. at 528 (citing Webster's Third New International Dictionary of the English Language Unabridged (1976)). *See also Washington*, 438 B.R. at 353 (the court does not recite the definition for "under" but does note that the Social Security Act induces but does not require states to pay unemployment compensation benefits). However in *Overby,* the court held that the dictionary definition of "under" is not helpful "because the word is subject to multiple definitions and meanings, some of which might justify a different result." *Overby,* 2010 WL 3834647, at \*2.

Another principal of statutory interpretation is that "deviations from established applications of judicial interpretation should be done with specificity." *See Baden*, 396 B.R. at 623 (citing *Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 501, 106 S. Ct. 755, 759, 88 L. Ed. 2d 859 (1986) (for the statutory interpretation rule). Some courts have held that the SSA Exclusion does not have the requisite specificity to mark a deviation in the established interpretation prior to BAPCPA that unemployment compensation is included in a debtor's disposable income. *See Baden*, 396 B.R. at 623 (citing *In re Minor*, 177 B.R. 576 (Bankr. E.D. Tenn.1995)). *See also Overby*, 2010 WL 3834647, at \*4; *Gentry*, 463 B.R. at 530. However, in *Adinolfi*, the court notes that "[t]he 'current monthly income' construct, including the SSA exclusion, did not exist prior to BAPCPA. Therefore, there are no pre-BAPCPA judicial interpretations of the relevant language." *In re Adinolfi*, 543 B.R. 612, 621 (B.A.P. 9th Cir. 2016).

Other courts rely on the statutory interpretation rule that remedial legislation should be construed broadly to effectuate its purpose, and conversely that exceptions to remedial legislation must be narrowly construed. *See Kucharz*, 418 B.R. at 642-43; *Gentry*, 463 B.R. at 530. *But see*

8

*Adinolfi*, 543 B.R. at 621, n. 5 ("The first problem with the remedial-statute rule is the difficulty of determining what constitutes a remedial statute. Is any statute not remedial? Does any statute not seek to remedy an unjust or inconvenient situation? ... The other problem with the remedial-statute rule is that identifying what a "liberal construction" consists of is impossible.... The canon is therefore today either incomprehensible or superfluous." (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 364–66 (2012)). These courts hold that the purpose of BAPCPA was to combat fraud and abusive filings and that the purpose of the definition of current monthly income was to include income from all sources. *See Kucharz*, 418 B.R. at 642-43; *Gentry*, 463 B.R. at 530. *See also Baden*, 396 B.R. at 622 (holding that including unemployment compensation benefits in the calculation of a debtor's current monthly income is consistent with the goals of BAPCPA); *Overby*, 2010 WL 3834647, at *4 (same). This reasoning was questioned by the *Adinolfi* court, which held that "the legislative history shows that the purpose was more precise: to help courts separate 'can-pay' debtors from 'can't-pay' debtors, and to require 'can-pay' debtors to pay as much as they can afford. The text of § 101(10A)(B) demonstrates that Congress decided that 'benefits received under the Social Security Act' should not count when identifying 'can-pay' debtors and deciding how much more they should pay." *Adinolfi*, 543 B.R. at 620.

The *Sorrell* court also notes that the Supreme Court recognized that a purpose of the Social Security Act was to provide newly unemployed workers with partial wage replacements to tide them over during their search for new employment. *Sorrell*, 359 B.R. at 181 (quoting *California Dept. of Human Resources Development v. Java*, 402 U.S. 121, 131–32, 91 S. Ct. 1347, 1354, 28 L. Ed. 2d 666 (1971)). The court rejected the United States Trustee's argument that the subject phrase is limited to direct benefits received under the Social Security Act and that unemployment

9

compensation was an indirect benefit. *Sorrell*, 359 B.R. at 183. The Court held that the plain language of Section 101(10A) does not make such a distinction. *Sorrell*, 359 B.R. at 183.

In addition to *Sorrell and Munger*, Debtors cite *In re Adinolfi*, 543 B.R. 612 (B.A.P. 9th Cir. 2016) and *In re Hite*, 557 B.R. 451 (Bankr. W.D. Va. 2016) to support their argument that unemployment compensation benefits are "benefits received under the Social Security Act." These decisions are relevant here because both courts held that benefits, in addition to old age, survivors, and disability insurance, were "benefits received under the Social Security Act."

In *Adinolfi*, the court provided a brief description of eighteen different benefit programs "provided for" in the Social Security Act. The court described a continuum of federal involvement among these benefit programs and categorized them as either (a) federally-administered programs (e.g., old age, survivors, and disability insurance benefits), (b) federal funding of state-paid benefits (e.g., Medicaid and adoption assistance), (c) federal reimbursement for administrative costs (e.g., unemployment compensation), and (d) federal block grants and loans (e.g., Temporary Assistance to Needy Families). In *Aldinolfi* and *Hite* the benefits at issue were adoption assistance and Medicaid, respectively, both of which fall into the category (b). For these programs, "if a state creates a program of a certain kind that meets detailed requirements . . ., the federal government will pay all or part of the benefits and the administrative costs of the program." *Adinolfi*, 543 B.R. at 617. In contrast, for unemployment compensation benefits at issue here and in the cases discussed above, the federal government merely reimburses the state for administrative costs. *Id*. Nevertheless, much of the courts' analysis is relevant to the issue before this court. In *Aldinolfi*, the court's decision was based primarily on a textual analysis of the language and held "[n]othing in the language of the SSA exclusion suggests that Congress intended to include only those programs that are funded and administered solely by the federal government." *Adinolfi*, 543 B.R.

at 619-20. The court then rejected much of the rational relied upon by the courts holding that unemployment compensation is not "benefits received under the Social Security Act." *Adinolfi*, 543 B.R. at 620-23. In *Hite*, the Court held that the *Adinolfi* court's analysis was persuasive and that the programs providing Medicaid waiver benefits and adoption assistance benefits are administered in the same way (i.e. state operated with 50% or more federal reimbursement of benefits and administrative costs).

As other courts have observed, the SSA Exclusion is certainly ambiguous. Reasonable minds have differed on whether unemployment compensation benefits are received under the SSA. After reviewing the SSA Exclusion, the many well-reasoned opinions on both sides of the issue, and the briefs submitted by the parties, the Court concludes that New Mexico unemployment compensation benefits are not "benefits received under the Social Security Act" and therefore the SSA Exclusion does not apply. A state agency, NMDWFS, largely administers New Mexico's unemployment compensation system. State law determines eligibility for benefits within parameters set by the SSA and FUTA. The State levies an unemployment compensation tax. Employers pay the tax to the State and at a rate set by the State. Claimants submit their claims to NMDWFS. NMDWFS processes those claims in accordance with state law. NMDWFS pays the benefits to claimants. The SSA sets certain parameters to ensure that the states' unemployment compensation laws are a sincere effort to assist workers between jobs and to ensure that states adopt a fair hearing process if benefits are denied. However, the SSA leaves great latitude to the states in deciding important issues such as the rate of the tax and eligibility for benefits. *See N.Y. Tel. Co. v. N.Y. State Dep't of Labor*, 440 U.S. 519, 537, 99 S. Ct. 1328, 1339, 59 L. Ed. 2d 553 (1979) ("The voluminous history of the Social Security Act made it abundantly clear that Congress intended the several States to have broad freedom in setting up the types of unemployment

11

compensation that they wish. ").  In addition to the SSA, the FUTA sets forth important limitations on the states' unemployment compensation systems.  However, the FUTA's further regulation of the states does not make unemployment compensation benefits any closer to be being benefits received under the SSA.  The states are subject to various limitations in establishing their unemployment compensation laws.  Some limitations are found in the SSA, some in other federal laws, but the state pays the benefits themselves to claimants and benefits are received by claimants under and in accordance with state law.

For these reasons, the Court concludes that beneficiaries do not receive unemployment compensation benefits under the SSA for purposes of applying the SSA Exclusion found in § 101(10A).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the unemployment compensation benefits paid to Debtors are not benefits received under the SSA, and therefore the SSA Exclusion does not apply to those benefits.  The unemployment compensation benefits received by Debtors during the applicable period must be included in Debtors' current monthly income calculation under Section 101(10A).

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:  March 23, 2017

12

Case 16-11408-j13    Doc 58    Filed 03/23/17    Entered 03/23/17 09:56:31 Page 12 of 13

COPY TO:

Kelley L. Skehen
625 Silver Ave. SW, Suite 350
Albuquerque, NM 87103

Michael Edward Lash
Christopher L. Trammell, P.A.
3900 Juan Tabo, NE
Albuquerque, NM 87111-3984

Richard Lawrence Branch
New Mexico Dept of Workforce Solutions
P.O. Box 1928 Legal Section
Albuquerque, NM 8710